Shippen, C. J.
Elizabeth Kintzing, though a bona fide creditor, lost the surety of her mortgage, as to all other persons except Burke, and those who were in pari delicto, by not recording her mortgage in six months. Allen was an innocent purchaser, ignorant of the mortgage. He therefore shall not suffer by her default, who by not recording in time, put it in the power of Burke to deceive him. As to Harrison, he was an innocent assignee of Burke; and though in general, an assignee stands in the shoes of the assignor, yet this appears to me one of those cases, where an assignee stands on better ground, than the as *354 signor. Because otherwise, he would be a sufferer, not by the roguery of Burke alone, but by the negligence of Kintzing, who now claims an equity at his expence.
As to Allen’s losing the land by not recording his deed within six months, he does not by this revive the right of Kintzing, but would have subjected himself only to the claim of a subsequent purchaser, who recorded before him. Then as Kintzing could not avail herself of her mortgage as against Allen, and he must pay the amount of his bond to somebody, it must be to •Harrison the innocent assignee.
Yeates, J.
The true construction of the recording laws, will in my idea, in a great degree, determine the point reserved, in this case.
The mortgage by John Burke to Elizabeth Kintzing is dated 8th October 1795, and was not entered on record, until 2 years, 3 months and 17 days after it was executed. The mortgaged premises were conveyed by Burke, the nominal plaintiff, to Richard Allen the defendant, on the 23d April 1796, and this deed was not entered on record, until 1 year, 9 months and 20 days had expired, being 18 days after the mortgage was recorded. .
Hence it is contended, that the mortgage shall prevail, on the ground of its being first recorded. And if it is an existing le*gal incumbrance, affecting the defendant’s lands, there ,-¥ can be no question, as to its being entitled to be defaulked [*355 out of the present bond.
The 8th section of the law of 28th May 1715, (1 St. Laws 112) is as follows: “No deed, or mortgage, or defeasible deed “in the nature of mortgages, hereafter to be made, shall be “ good or sufficient, to convey or pass any freehold of inheritance, “ or to grant any estate therein for life or years, unless such “deed be acknowledged or proved and recorded, within six “months after the date thereof, where such lands lie, as herein “before directed for other deeds.”
It is objected, that the conveyance to the defendant is comprehended in this description. But it is to be observed, that the words, in the nature of mortgages, run through the whole sentence, and the latter word is in the plural number; they limit and controul the generality of the preceding expressions. Besides, other deeds in the close of the section, contradistinguish the objects of it, from the deeds in general provided for in the preceding parts of the law ; and the uniform construction of the act, since it has passed, has been, that in this particular, it solely relates to mortgages, and defeasible deeds in their nature. It would be highly dangerous at this time, to adopt the words in a different sense, whereby many titles might be affected.
The first section of the law of 18th March 1775, (1 St. Laws 703,) enacts, that deeds and conveyances of lands, which shall not be recorded in the proper county within six months after *355 their execution, “ shall be adjudged fraudulent and void against “any subsequent purchaser or mortgagee for valuable considera- “ tion, unless such deed or conveyance be recorded before the “proving and recording of the deed or conveyance under which “such subsequent purchaser or mortgagee shall claim.” The reason of the provision is manifest, because if in consequence of the neglect of the grantee to record his deed within the time appointed, other persons have been induced to pay and expend their money ignorantly and without notice of the former conveyance, the loss should fall on the first grantee only, who has caused the same. But a prior mortgagee, who could not possibly suffer by,a want of knowledge of the subsequent deed’s being executed, is neither within the words nor spirit of the provision. The terms, subsequent purchaser or mortgagee, are repeated, and there is no appearance in any part of the act of any intention of the legislature to make any alteration of the former act, as to the invalidity of mortgages not recorded within the six months, or to revive them against subsequent bona fide *356] *purchasers if they were first put on record. That act has fully provided for the case of mortgages unrecorded.
I conclude, therefore, that the mortgage to Elizabeth Kintzing does not bind the lands conveyed to Richard Allen, though it would have been effectual against John Burke himself, the mortgagor, if the same was in his hands, agreeably to the authority of Levinz v. Will, (1 Dall. 134,) on this plain ground, that in such case no one would be injured thereby.
I readily agree with the counsel, that if Burke was the real plaintiff, the defalcation contended for would certainly take place, and that an assignee is subject to all the equity which subsisted between the original parties. I lay no stress whatever on the circumstances of the payments of 50 dollars in February 1797, and of 150 dollars in April following, by Allen to Harrison. Such acknowledgments of the debt, or even an express promise to pay the obligation would not conclude the defendant, if made in a state of ignorance of a subsisting defence. 5 Burr. 2670. 1 Vern. 32. 1 Vez. 126, 400. 1 Fonbla. 106. 1 Espin. Ni. Pri. 174. 1 H. Bla. 64. But if Harrison had been led by the assertions or promises of Allen to take the assignment and pay his money, then the defendant would have made himself liable, because his declarations and engagements would form a new contract between him and the assignee, and he would not be permitted to injure an innocent stranger. This doctrine was laid down on full consideration, by Judge Smith and myself at Reading, at Nisi Prius in September 1799, between Ludwig assignee v. Croll, and was again asserted by Judge Smith at the sittings in Philadelphia, between Cairnes for the use of Olden v. Field and Harlan, and afterwards on a motion for a new trial, was assented to by the whole court, March term 1800.
In this case, I view Thomas Harrison as the true and real *356 plaintiff, the legality and equity of whose demand is now before the court. The decisions of courts of law formerly were extremely narrow and contracted as to the assignment of choses in action; but they will now take notice of a trust, and see who is beneficially interested. And why not of an equity ? says Ashurst, J. 1 Term Rep. 619; and in the elaborate argument of Mr. Justice Buller, in Master v. Millar, he observes that the good sense of the rule, that a chose in action cannot be assigned or granted over to another is very questionable. In early as well as modern times, it has been so explained away, that it remains at most only an objection to the form of the action, in any case. The courts of law will take notice of the assignment of choses in action, though they adhere to the formal objection, that the *action shall not be brought in the name of the assignor; [*357 but there is no use in preserving the shadow when the substance is gone, and that it is merely a shadow is apparent from the later cases, in which the court have taken care that it shall never work injustice. 4 Term Rep. 340, 341.
The defendant Allen is bound to perform his contract and pay the stipulated price, but not beyond it. Whom then ought he to pay ? Has Mrs. Kintzing or Mr. Harrison the superior equity, or best founded claim to the money ? The former relied on the lands as her security, and at one time had a lien on them, but afterwards permitted it to slip through the fingers ; and if my ideas of the two recording acts are correct, the lands in the defendant’s hands cease to be chargeable with the mortgage. She neglected to perform a duty which the law imposed upon her, and if any injurious consequences result from her laches, she only is blameable. On the other hand, Harrison purchased the bond, relying on the credit and responsibility of Allen and is guilty of no default whatever. When he took the assignment before 21st January 1797, no incumbrances appeared on record to put him on his guard against Burke, and it is admitted that neither he nor Allen knew of the mortgage executed by Burke, until the same was recorded.
On the whole, I think the claim of Harrison much superior in point of equity to that of Kintzing, and that the money intended to be secured by the mortgage of the latter should not be deducted from the sum due on the bond.