## Case No. 6,900.

### HUNT v. UNITED STATES.

### [1 Gall. 32.] [1]

Circuit Court, D. Massachusetts. May Term, 1812.

BOND OF SURETY—EFFECT OF JUDGMENT AGAINST CO-OBLIGOR—DELAY IN DEMANDING PAYMENT—DISCHARGE OF SURETY.

In debt on a joint and several bond given for duties, it is no objection in a several action against one of the obligors, that a co-obligor has been taken in execution on a judgment on the same bond, and discharged under the act of congress of June 6, 1798, c. 66 [4 Folwell's Laws, 121; 1 Stat. 561, c. 49]. A surety upon a bond is not discharged by a mere delay to demand payment after it becomes due, unaccompanied by fraud or an express agreement with the principal to allow the delay. And quaere how far such delay by agreement is a good bar in favor of a surety at law. Quaere, also, if a party can, as to the obligee, aver himself a surety, unless his character appear on the face of the bond.

[Cited in Locke v. Postmaster General, Case No. 8,441; U. S. v. Sturges, Id. 16,414; Bank of Mt. Pleasant v. Sprigg, Id. 891; Hagood v. Blythe, 37 Fed. 250.]

[Cited in Townsend v. Riddle, 2 N. H. 449, 451, 452; Davis v. Huggins, 3 N. H. 231; Grafton Bank v. Kent, 4 N. H. 223; Curan v. Colbert, 3 Ga. 239; Bank of Steubenville v. Carrol, 5 Ohio, 215; Cope v. Smith, 8 Serg. & R. 112; Hunt v. Bridgham, 19 Mass. 584; Baker v. Briggs, 25 Mass. 125.]

[Error to the district court of the United States for the district of Massachusetts.]

Mr. Selfridge, for plaintiff in error.
G. Blake, for the United States.

STORY, Circuit Justice. This is a writ of error to the district court of Massachusetts district. The original action was on a bond for the payment of duties, in which one J. B. Frazier and one Ephraim Wilcox and the plaintiff in error [Augustus Hunt], on the 11th of November, 1807, became jointly and severally bound to the United States in the penal sum of $2,000, conditioned to pay on or before the 11th day of August, 1808, the duties of certain goods, which were ascertained to the amount of $576. The plaintiff in error, after oyer of the bond, pleaded in bar in the court below, that on the first day of January, 1810, a suit was commenced on the bond against Frazier, and judgment recovered in that suit for $576, upon which judgment execution issued, and Frazier, on the 10th day of May, 1811, was arrested and committed to prison; and that afterwards, on the 15th day of June, 1811, Frazier was freely and voluntarily released and discharged therefrom by the United States, in conformity and according to the provisions of the act of June 6, 1798, c. 66 [4 Folwell's Laws, 121; 1 Stat. 561, c. 49], without the consent and against the will of the plaintiff in error. To this plea there was a general demurrer and joinder, on which the court below gave judgment for the United States.

1 [Reported by John Gallison, Esq.]

The points relied on by the counsel for the plaintiff in error are, 1. That by the act of March 2, 1799, c. 128, § 65 (4 Laws [by Folwell] 386 [1 Stat. 676, c. 22]), the collectors of the customs are required immediately and without delay, as soon as bonds for duties become due and are not paid, to cause prosecutions to be commenced therefor. That no suit was commenced against Frazier until the 1st of January, 1810, which was more than sixteen months after the bond became due; by which negligence the sureties were injured, and so in effect are discharged by operation of law.

On examining the pleadings, I do not find that it directly appears, that the plaintiff in error stands in the character of a surety. It is not so stated in the bond nor in the plea, and can only be gathered by inference from the condition of the bond, where the goods are stated to be "entered by Frazier as imported in the brig Pallas." But by the act of March 2, 1799, c. 128, § 36 [4 Folwell's Laws, 340; 1 Stat. 655, c. 22], an entry may be made by an owner, consignee, part owner or agent, of any imported goods; and it cannot be inferred that Wilcox and the plaintiff in error were not jointly connected with Frazier in this transaction. Certainly so material a fact ought to have been directly averred, though perhaps it may be very doubtful, whether a court of law could decide upon such an averment, where it did not appear to be true on the face of the bond. People v. Jansen, 7 Johns. 332; Rees v. Berrington, 2 Ves. Jr. 540, 544. But even if this objection were removed, the main difficulty would remain. In chancery it has been certainly held, that where the obligee, without communication with the surety, takes notes from the principal, and gives further time, the surety is discharged. Rees v. Berrington, 2 Ves. Jr. 540; Skip v. Huey, 3 Atk. 91. So if, without such payment, the obligee on the bond becoming due, without notice to the surety, contract to give further time to the obligor. Nisbet v. Smith, 2 Brown, Ch. 579. How far the same principles will avail the party in a court of law, has been a subject of much discussion of late years. In Peel v. Tatlock, 1 Bos. & P. 419, where the defendant had made a guaranty for the good conduct of a clerk, it seems to have been thought that a fraudulent concealment of a default of the clerk, for a considerable length of time, would have discharged the guarantor at law. But in no case, that I can find, has the mere delay to require payment, without any contract for this purpose, been held to vary the responsibility of the sureties. In Trent Nav. Co. v. Harley, 10 East, 34, where the only question was, whether the laches of the obligee in not calling upon the principal so soon as he might have done, if the accounts had been properly examined from time to time, was an estoppel at law against the sureties, Lord Ellenborough said, he knew of no such es-

toppel at law, whatever remedy there might be in equity.[2] In People v. Jansen, 7 Johns. 332, the court expressly held, that in the ordinary case of a bond with sureties, the obligee is under no positive injunction, or legal obligation, to watch over the conduct of the principal debtor, and in case of failure of punctual payment, to adopt measures calculated to relieve the surety; and further, that mere delay in calling upon the principal was not a discharge of the surety either at law or in equity. It is true, that in that case, which was a case of the bond of a public officer (in respect to the settlement of whose accounts from time to time there were many statutory provisions) the court held the sureties discharged at law: but it was on the express ground of those provisions, and also of the gross laches in the superintending officers, after full knowledge of the default, and when it appeared, that the sureties must thereby have to sustain the whole loss, in case of a recovery; whereas, if there had been due diligence, none would have been sustained.[3]

In the present case, it does not appear, that the sureties are worse off in consequence of the delay, and the court cannot certainly intend it. If it were true, it ought to have been set out in the pleadings. But I do not conceive, that the doctrine of the last case can in any shape affect the present case. The act of March 2, 1799, c. 128, § 65 [1 Stat. 676, c. 22], is merely directory to the collectors, who may perhaps, in case of a loss by their omission, become themselves liable for the debt. The mandate applies equally to the sueing of all the parties to the bond, and the neglect to sue one cannot operate to discharge another, any more than the same neglect would operate to discharge the first party. I adopt it as a sound principle, that mere delay, unaccompanied with fraud, or a settled agreement with the principal for that purpose, does not discharge the responsibility of the surety.

2. In the second place, it has been argued, that the discharge of Frazier from imprisonment was a complete discharge of the debt; and this, having been done without the consent of the plaintiff in error, has completely exonerated him. It has been said by

[2] In Davey v. Prendergrass, 5 Barn. & Ald. 187, it was decided that giving time to the principal by agreement was no discharge at law to the surety. See People v. Jansen, 7 Johns. 332; Rathbone v. Warren, 10 Johns. 587; Pain v. Packard, 13 Johns. 174; People v. Berner, Id. 383; Fulton v. Matthews, 15 Johns. 433; Powell v. Waters, 17 Johns. 176; King v. Baldwin, Id. 384; 2 Johns. Ch. 584; Barnard v. Norton, Kirby, 193; Deming v. Norton, Id. 397; Graham v. Goudy, Add. 55; Ludlow v. Simond, 2 Caines, Cas. 1; Burn v. Poaug, 3 Desaus. Eq. 604; 3 Yeates, 360; Ellis, Dr. & Cr. c. 8.

[3] Giving time to his debtor, and how far it affects sureties, see Moore v. Bowmaker, 6 Taunt. 379, 2 Marsh. (Eng.) 81, 392; Orme v. Young, 1 Holt, N. P. 84; Dunn v. Slee, Id. 399; Boultbee v. Stubbs, 18 Ves. 20; 2 Johns. Ch. 554.

the attorney for the United States, that however that may be, as to joint obligations, it cannot apply to those which are joint and several. And Kyd, Bills, 116, which cites Hayling v. Mullhall, 2 W. Bl. 1235, has been cited in support of the argument. But that authority does not apply, because there the contract was not joint, but there were several independent contracts on a bill of exchange; and the decision of the court was, that the actual taking of a man in execution, and afterwards discharging him, is no satisfaction as to any of the antecedent parties on a bill of exchange. But it is most clear and undoubted law, that a release to one of several obligors, who are bound jointly, or jointly and severally, discharges the others, and may be pleaded in bar by all. 2 Rolle, Abr. 412, (G) pl. 4, 5; Clayton v. Kynaston, 2 Salk. 574; Comyn, Dig. "Pleader" (W 2) 30; Co. Litt. 232, and note 144; 2 Saund. 48; Rowley v. Stoddard, 7 Johns. 207. So also it is settled, that a discharge of one debtor taken on a joint execution is a complete discharge of both. Clarke v. Clement, 6 Term R. 525. Nay, if a debtor, once taken on execution, be discharged from arrest on an agreement to pay at a future day, or to yield himself up again on the execution, he cannot be again taken in execution, but is completely discharged. Vigers v. Aldrich, 4 Burrows, 2482; Jaques v. Withy, 1 Term R. 557; Tanner v. Hague, 7 Term R. 420; Blackburn v. Stupart, 2 East, 243. Now the ground, on which all those cases proceed, is, that the plaintiff can have but one satisfaction; and he is considered as receiving a satisfaction in law by having his debtor once in custody in execution. Yelv. (Metcalf's Ed.) 68a, note. At first view these cases would seem to govern the present; and if it cannot be distinguished by the operation of the act of June 6, 1798, c. 66, 4 Laws [by Folwell] 121 [1 Stat. 561, c. 49], the bar must be supported. By that act (which was made long before the bond in this suit was given), it is provided that notwithstanding such discharge, the judgment shall remain good and sufficient in law, and may be satisfied out of any estate, which may then or at any time afterwards belong to the debtor.

At the argument, I was struck with the consideration, that this act would not bind the surety, but leave him to the ordinary operation of the common law. But on further reflection I am of a different opinion. The sole ground, upon which a co-obligor is discharged, is, that the debt or judgment has been once satisfied. When the law has declared, that a particular act shall not be deemed a satisfaction of the debt or judgment, it would seem to follow, that it cannot be pleaded, as a discharge of any party to such debt or judgment. The cases of Nadin v. Wardle, 5 East, 147, and McLean v. Whiting, 8 Johns. 339, seem to me evidently to rest on this general foundation. I have come to this result not without some

hesitation; and it is certainly a perilous proceeding to discharge the principal debtor without the assent of his surety. I give no opinion, how the law would have been, if it had appeared, that, upon the discharge, the United States had taken any security pursuant to the act of June 6, 1798, c. 66 [1 Stat. 561, c. 49]. Judgment affirmed with costs.

See, also, as to the first point, Comth v. Boynton, 4 Dall. [4 U. S.] 282.