### TRUMAN v. WEED et al.

(Circuit Court of Appeals, Third Circuit. May 14, 1895.)

#### No. 17.

MORTGAGES—RECORDING—PENNSYLVANIA STATUTE OF 1715.

One W., in 1878, mortgaged certain lands to T. In 1882 W. died, leaving a will, by which he gave all his property, including the mortgaged lands, to one M., in trust to carry on business, making the trust estate liable for the debts of such business. M. contracted debts to an amount largely in excess of the value of the trust estate, credit having been given on the faith of such estate. In 1893, after the trust estate had become insolvent, and after M. had been removed and a new trustee appointed, the mortgage to T. was recorded for the first time. *Held,* that such mortgage was within the mischief of the Pennsylvania statute of May 28, 1715 (section 8), requiring mortgages to be recorded within six months after execution, and was invalid.

In Error to the Circuit Court of the United States for the Western District of Pennsylvania.

This was an action of scire facias on a mortgage by Emily M. Truman against Lucy T. Weed and others. The circuit court gave judgment for the defendants. Plaintiff brings error.

C. La Rue Munson (Addison Candor and Rodney A. Mercur, with him), for plaintiff in error.

Seth T. McCormick (Henry C. McCormick, with him), for defendants in error.

Before DALLAS, Circuit Judge, and GREEN and BUFFINGTON, District Judges.

DALLAS, Circuit Judge. This was an action of scire facias on a mortgage which was dated October 10, 1878, but was not recorded until August 5, 1893. The court below held that this mortgage, because of the delay in recording it, was invalid, and therefore, upon points reserved, entered judgment for the defendants. The material facts and circumstances of the case were well stated by the learned trial judge, as follows:

"Although the mortgage in suit was executed and delivered on October 10, 1878, it was not recorded until August 5, 1893. The mortgagor, Frederick R. Weed, died on April 1, 1882, leaving a will, by which he devised all his estate, real and personal, to Mills B. Weed in trust, with power to 'possess, hold, and manage the same, and conduct and carry on business, and trade, barter, buy, and sell in and for all things that pertain to the said estate and its business or its products, and make such investments and purchases of other property, real or personal, as he may deem best for the interests of the trust hereby created,' etc. Mills B. Weed accepted and entered upon the duties of this trust, and, in the execution thereof, conducted several kinds of business which his testator had carried on, until the month of March, 1891, when he suspended payment of his obligations. In thus carrying on business under the powers conferred by said will, the trustee contracted debts which at the time of his failure, in March, 1891, amounted to about $250,000. The value of all the real and personal estate so devised and bequeathed to the trustee was then (March, 1891) of the value of about

the sum of $150,000 only. The trustee was then personally insolvent. He was not then nor thereafter personally possessed of any property.

"The supreme court of Pennsylvania had occasion to consider the will of Frederick R. Weed, and to determine the relation of the trust creditors to the trust estate and the duty of the trustees to the trust creditors, in the cases of Woddrop v. Weed, 154 Pa. St. 307, 26 Atl. 375, and Young v. Weed, 154 Pa. St. 316, 26 Atl. 420. The court then said:

" 'While the wife and the others are named in the will as cestuis que trustent, there came into existence, by reason of the power of the trustee, the estate embarked in trade, and the credit given the trust estate in the business, a class of persons whom equity in cases of insolvency will protect by the preservation of the trust property from destruction or dissipation. This equity has its foundation in the estate which is embarked, and to which credit has been given.' 154 Pa. St. 312, 26 Atl. 375.

" 'The trust estate is primarily liable for the debts contracted upon the faith of it. As it is insolvent, and the trustee, as the master finds, is also insolvent, he became a trustee for its creditors.' 154 Pa. St. 313, 26 Atl. 375.

" 'The purpose of the trust was to conduct and carry on the business, and by the insolvency this purpose was at an end. Such being the case, the duty of the trustee was to file his account and terminate the trust by the distribution of its assets among the creditors pro rata.' 154 Pa. St. 313, 26 Atl. 375.

"Speaking of the attempt of Mills B. Weed as executor of the will of Frederick R. Weed to waive the five-years statutory limitation of the lien of a debt of the testator, the court said:

" 'In the present case the lien upon the property in question had expired by operation of law, and Mills B. Weed, as trustee, held it free from it, for the benefit of the trust estate. The estate being insolvent, and the rights of the creditors in consequence of it having intervened, he had no right as a trustee to waive the operation of the statute, and thus restore the lien. As the title to this property has vested in the trustee free from the lien of this debt, as the rights of creditors to it as part of the trust estate had intervened, a confession of judgment by him as executor could not re-establish this lien that had ceased to exist against it.' 154 Pa. St. 321, 26 Atl. 420.

"On April 22, 1893, the court of common pleas of Lycoming county removed Mills B. Weed from his said trust, and on April 29, 1893, appointed in his place J. C. Hill as trustee. The effect of the adjudication by the supreme court of Pennsylvania is that the land against which this scire facias is directed, as part of the trust estate devised to Mills B. Weed, is bound for the debts created by the trustee in carrying out the provisions of the will of Frederick R. Weed; and, by the action of the court of common pleas, J. C. Hill became invested with the legal title to the land for the purpose of the sale thereof and the distribution of the proceeds among the trust creditors pro rata. Now, it was not until August 5, 1893, after Hill's appointment as trustee, when the land was in gremio legis, that the Truman mortgage, which had laid dormant for nearly 15 years, was put on record. There is no evidence of prior knowledge of it by Mills B. Weed, or by any of the trust creditors. Presumably, both the trustee and trust creditors acted in ignorance of its existence."

The provisions of the Pennsylvania recording acts which have been discussed by counsel are as follows:

Act May 28, 1715 (1 Smith's Laws, 95; 1 Brightly's Purd. Dig., 11th Ed., p. 587, pl. 119):

"Sec. 8. No deed or mortgage, or defeasible deed in the nature of mortgages, hereafter to be made, shall be good or sufficient to convey or pass any freehold or inheritance, or to grant any estate therein for life or years, unless such deed be acknowledged or proved, and recorded within six months after the date thereof, where such lands lie, as hereinbefore directed for other deeds."

Act March 18, 1775 (1 Smith's Laws, 422; 1 Brightly's Purd. Dig., 11th Ed., p. 583, pl. 94):

"Section 1. All deeds and conveyances which, from after the publication hereof, shall be made and executed within this province, of or concerning any lands, tenements or hereditaments in this province, or whereby the same may be any way affected in law or equity, shall be acknowledged by one of the grantors or bargainors, or proved by one or more of the subscribing witnesses to such deed, before one of the judges of the supreme court, or before one of the justices of the court of common pleas of the county where the lands conveyed lie, and shall be recorded in the office for recording of deeds in the county where such lands or hereditaments are lying and being, within six months after the execution of such deeds and conveyances; and every such deed and conveyance that shall, at any time after the publication hereof, be made and executed, and which shall not be proved and recorded as aforesaid, shall be adjudged fraudulent and void against any subsequent purchaser or mortgagee for valuable consideration, unless such deed or conveyance be recorded as aforesaid, before the proving and recording of the deed or conveyance under which such subsequent purchaser or mortgagee shall claim."

Act March 28, 1820 (7 Smith's Laws, 303; Brightly's Purd. Dig., 11th Ed., p. 588, pl. 122):

"Section 1. All mortgages, or defeasible deeds in the nature of mortgages, made or to be made or executed for any lands, tenements or hereditaments within this commonwealth, shall have priority according to the date of recording the same, without regard to the time of making or executing such deeds; and it shall be the duty of the recorder to endorse the time upon the mortgages or defeasible deeds when left for record, and to number the same according to the time when they are left for record, and if two or more left upon the same day, they shall have priority according to the time they are left at the office for record; and no mortgage or defeasible deed in the nature of a mortgage, shall be a lien, until such mortgage or defeasible deed shall have been recorded, or left for record as aforesaid: Provided, that no mortgage given for the purchase-money of the land so mortgaged, shall be affected by the passage of this act, if the same be recorded within sixty days from the execution thereof."

The act of 1715, in its eighth section, relates only to mortgages or defeasible deeds, and, as to them only, makes recording a condition of title. The act of 1775, for the first time, required that absolute deeds should be recorded (Powers v. McFerran, 2 Serg. & R. 47; Keller v. Nutz, 5 Serg. & R. 252; Kingston v. Lesley, 10 Serg. & R. 389), and made their validity, as against subsequent conveyances or mortgages, dependent upon priority of record. The purposes of the two acts were different. In Burke v. Allen, 3 Yeates, 355, they were contrasted, and the court said:

"There is no appearance in any part of the act [of 1775] of any intention of the legislature to make any alteration of the former act [of 1715] as to the invalidity of mortgages not recorded within the six months."

In Souder v. Morrow, 33 Pa. St. 84, it was, however, subsequently held that a mortgage, although not recorded until after the expiration of six months from its date, is good, as against an absolute deed of later date, if the mortgage be first of record. This decision, it is claimed, conflicts with the others to which we have referred. But it seems to have been made without consulting them. They were not mentioned either by counsel or by the court, and the act of 1715 was either overlooked or was regarded as inapplicable. The judgment was based solely upon the act of 1775, which, it was said, supplied "the very law" of the case. The only question which appears to

have been considered was whether the benefit of that act, notwithstanding its restrictive designation of subsequent conveyances or mortgages, could be extended to a prior mortgage, and it was held that it could be; but, as has been already said, the point that the particular mortgage there involved was void under the act of 1715 was not taken, nor had it arisen or been discussed in any of the cases which counsel there cited, and which were said by the court to "cover the whole case." Under these circumstances, we must decline to regard Souder v. Morrow as overruling Burke v. Allen, or as authority for the proposition (which in that case was distinctly negatived, and in Souder v. Morrow was neither expressly affirmed nor advisedly accepted) that the eighth section of the act of 1715 was abrogated by the act of 1775. It is the uniform course of the state decisions by which in such matters this court should be guided, and not by one of them, though the latest, in which the judges, without at all considering the same question, but with reference solely to a distinct and different one, were led to a conclusion which occasioned an anomalous result. Townsend v. Todd, 91 U. S. 453. In Fries v. Null, too, when first argued (154 Pa. St. 573, 26 Atl. 554), none of the cases which had dealt with the act of 1775 in connection with the act of 1715 were referred to; but, again, the last-mentioned act was left entirely out of view. As in Souder v. Morrow, the parties litigant were "purchasers or mortgagees," contending for priority; and, as to them, it was held that, under the act of 1775, a mortgage recorded after six months was entitled to preference over a deed recorded subsequently, though within six months; but whether any estate would pass by a mortgage not recorded as required by the act of 1715 was not considered. It was said, with regard to the act of 1775, "that it is the first recording that gives the preference"; but that, by the act of 1715, the recording of a mortgage within six months is requisite to make it "good and sufficient * * * to pass any estate," was not adverted to. Souder v. Morrow was followed, but that case, as we have seen, was equally silent upon the particular subject with which we are now concerned, and to that subject the other cases which were mentioned by the court have no relevancy. They were not cases of mortgages or defeasible deeds. Manifestly, in Fries v. Null (when first decided), as well as in Souder v. Morrow, the act of 1715 was not in contemplation. But Fries v. Null was reargued (158 Pa. St. 16, 27 Atl. 867), and, attention being then directed to the decision in Burke v. Allen, the court said, not that it was incorrect, but that it was not applicable. If, however, Burke v. Allen had been disapproved in Fries v. Null, the latter case would not be controlling in the present one. The rights of these parties had accrued at a time when Burke v. Allen was authoritative, and therefore its rejection thereafter by the state court would not have prevented its application by this tribunal to the controversy which it is now called upon to decide. Burgess v. Seligman, 107 U. S. 33, 2 Sup. Ct. 10; Bucher v. Railroad Co., 125 U. S. 584, 8 Sup. Ct. 974.

The act of 1820 made no change in the act of 1715. In Fries v. Null, 158 Pa. St. 16, 27 Atl. 867, it was said:

"Nor is the act of 1820 at all applicable to these parties or to their controversy. Of course, as between opposing mortgages, there is no lien except from the date of record."

This remark was made with especial reference to the act of 1775, but it is no less cogent when related to the act of 1715. It quite as effectually disposes of the act of 1820 in the present case as in that in which it was made.

The earnest and able argument of counsel for the plaintiff in error upon the effect of the cases we have discussed has induced their careful examination, but the view we have taken of them is, we are convinced, the only reasonable one; and in this we are confirmed by the fact that in other Pennsylvania decisions (about to be referred to) it has been assumed that the eighth section of the act of 1715 was not affected by the subsequent legislation, but that the only question was as to its applicability to particular cases. Nothing could be plainer than the meaning of the section of the act of 1715 upon which, as we have now shown, this cause must be determined. It could not be made more clear by the substitution of any other language for that in which it is couched. As it concerns the present case, it is: No mortgage shall pass any estate unless recorded within six months after the date thereof. To apply this provision to the mortgage in suit is to extinguish that mortgage. But it is contended that it should not be applied in this case, and, to maintain that contention, counsel have cited several adjudications of the supreme court of Pennsylvania, which we have attentively read, but need not refer to in detail. It appears from them that, under the familiar rule that statutes are to be so construed as to suppress the mischief and advance the remedy, it has been held that, where no one is injuriously affected by failure to record, the mischief intended to be remedied is not present; and that, therefore, regard being had to the spirit of the enactment, the omission to comply with its requirement is, in such cases, not fatal. "The mortgagor is not hurt, neither is a subsequent purchaser or mortgagee with notice, nor a judgment creditor who gave credit with the unrecorded mortgage before his eyes; and, were they enabled to destroy the rights of the mortgagee, their doing so would be a fraud upon him." It has been only where "no one was hurt" that the courts have "felt at liberty to construe the statute according to its spirit and design, rather than its letter." Appeal of Britton, 45 Pa. St. 172. And though, in such cases only, "the letter of the law gives way to promote the equity of the spirit, still an unrecorded mortgage is a forbidden thing." Appeal of Nice, 54 Pa. St. 200.

We have, we think, correctly indicated the reasoning and effect of all the Pennsylvania authorities upon this subject; but, if there was any conflict among them, this court would be at liberty to adopt, and would not hesitate to apply to the facts disclosed by this record, the observations made by Lord Ellenborough in King *v.* Inhabitants of Leek Wootton, 16 East, 118, that, "where there are conflicting decisions upon the construction of a statute, the court must refer to that which is and ought to be the source of all such decisions; that is, the words of the statute itself." The Pennsyl-

vania decisions, however, do not, according to our understanding of them, lend any support to the position of the plaintiff in error. The defendants in error would be grievously "hurt" if the letter of the law were to be set aside in this case, and an unrecorded mortgage—"a forbidden thing"—were suffered to prevail against them. It clearly appears from the statement which we have extracted from the opinion of the court below that neither the trust creditors nor Mills B. Weed were mere volunteers. By the former, credit was given to the trust estate, in good faith, and without notice of the unrecorded mortgage; and, by the latter, services were rendered and pecuniary responsibility assumed, without knowledge of its existence. To permit it to deprive them of the whole or any part of the property upon which the state of the record justly entitled them to rely, would not be to equitably construe the statute, but to deny its protection to innocent and meritorious parties, and this at the instance of the representative of a mortgagee, whose demand to be relieved from the consequences of the failure to comply with the terms of the act is not supported by any consideration of justice or equity.

There is no force in the objection which was interposed in the court below, that the defense set up is an equitable one. It clearly is not. The point does not call for discussion here. It was correctly decided by the court below, and what the learned judge of that court said upon the subject in the opinion which he filed, is entirely satisfactory and amply sufficient. The judgment is affirmed.