## Case No. 16,611.

### UNITED STATES v. VANZANDT.

[2 Cranch, C. C. 338.] [1]

Circuit Court, District of Columbia. Oct. Term, 1822. [2]

REGIMENTAL PAYMASTERS—ACTION ON BOND—CERTIFIED ACCOUNT AS EVIDENCE—LIABILITY OF SURETIES.

1. A copy of a regimental paymaster's account, as settled by the accounting officers of the treasury, certified according to the act of the 3d of March, 1817 [3 Stat. 366], "to provide for the prompt settlement of accounts," is competent evidence to the jury of the balance due from the paymaster to the United States.

[Followed in U. S. v. Griffith, Case No. 15,-263.]

2. A copy of a paymaster's bond, certified according to the "act to provide more effectually for the settlement of accounts between the United States and receivers of public money," is competent evidence.

3. If a regimental paymaster neglects or fails to make any report to the paymaster-general once in two months, showing the disposition of the funds previously transmitted, with estimates for the next payment of the regiment, and so neglects or fails for more than six months after receiving the funds, and is not recalled for such default and neglect, but additional funds are placed in his hands, notwithstanding his known neglects and defaults, the sureties in his official bond are not chargeable for his failure to account for such additional funds.

Debt upon the official bond of John Hall, a regimental paymaster. The defendant [Nicholas B. Van Zandt] and one David Ott were his sureties. The condition was "that, whereas the said John Hall is appointed paymaster of the Rifle Regiment in the army of the United States aforesaid; now if the said John Hall shall well and truly execute and faithfully discharge, according to law and instructions received by him from proper authority, his duties as paymaster, aforesaid, and he, his heirs, executors, or administrators

[1] [Reported by Hon. William Cranch, Chief Judge.]

[2] [Reversed in 11 Wheat. (24 U. S.) 184.]

shall regularly account, when thereto required, for all moneys received by him, from time to time, as paymaster, aforesaid, with such person or persons as shall be duly authorized and qualified on the part of the United States for that purpose, and moreover pay into their treasury such balance as on a final settlement of the said John Hall's accounts, shall be found justly due from him to the said United States, then this obligation shall be null," &c. The alleged breach of the condition of the bond was, in not paying into the treasury the sum of $29,266.06, a balance of an account settled and certified by the accounting officers of the treasury department.

Mr. Swann, the attorney of the United States, offered in evidence, a copy of the bond, certified by the register, and authenticated under the seal of the treasury department, according to the act of the 3d of March, 1797 (1 Stat. 512), "to provide more effectually for the settlement of accounts between the United States and receivers of public money." And a copy of the account of the paymaster as adjusted by the accounting officers of the treasury, and certified by the second auditor, according to the act of the 3d of March, 1817 (3 Stat. 366), "to provide for the prompt settlement of public accounts."

Mr. Jones, for defendant, objected to these documents thus certified, and contended: (1) That the sureties are not bound by these treasury settlements, especially such a naked certificate of a balance of $29,266. The act of 3d of March, 1797, is applicable only to "receivers of public money." Such is its title, and the first section shows that it is confined to those who are entitled to commissions upon their disbursements. The second section corroborates this construction, and speaks of delinquency. This is not a suit against a delinquent. The defendant is only collaterally bound; he is not a receiver of public money, and has no knowledge of the accounts of the paymaster. The account, if evidence at all, is only evidence against the principal, not against the surety. (2) That this is not "a transcript from the books and proceedings of the treasury." It is only the transcript of a particular act done on a particular day. It is not a transcript of the whole of the proceedings of the treasury in relation to the account of the paymaster, it is only a certificate that a balance of $29,266 was struck on a certain day. It is an account against the late paymaster. It was made up after he was out of office, and the first item is, "to balance on settlement this day." The settlement does not appear.

Mr. Swann, contrà. The same law which applies to the principal, applies to the surety. Evidence against Hall, is evidence against his sureties. The suit might have been brought against them jointly. The first section of the act applies to receivers of public money who are entitled to commissions, but the other sections are not so limited. The second section is in general terms, "in every case of delin-

quency," a transcript from the books of the treasury is evidence. So by the same act, in any case, an execution may run into any state.

THE COURT (MORSELL, Circuit Judge, contrà) admitted the bond and account thus certified, to be read to the jury as evidence of the amount due from Hall to the United States. The attorney for the United States further gave in evidence, a statement of the charges against the paymaster, on the books of the paymaster-general's office, and the transmission of accounts, vouchers, and estimates by him to that office, and also gave evidence to prove that the statement was correctly made from the books of the paymaster-general, and also sundry original letters from the said Hall, to the paymaster-general; and the original entries in the books of the second auditor, showing that several settlements of his accounts were made at sundry times by the second auditor. He also gave evidence that the moneys advanced to the said Hall, were to have been disbursed by him in the Western country, namely, at St. Louis, in Missouri; to all which evidence the counsel for the defendant objected that it was not competent or admissible to charge this defendant in this action.

But THE COURT (MORSELL, Circuit Judge, contrà) overruled the objection, and permitted the evidence to be given to the jury. Whereupon the counsel for the defendant prayed the court to instruct the jury, that if from the said evidence they should believe that the said Hall had neglected and failed to make any report or reports to the paymaster-general once in two months, showing the disposition of the funds, previously transmitted, with estimates for the next payment of the regiment, and had also neglected and failed either to transmit such estimates, or to render his vouchers to the paymaster-general for settlement, more than six months after receiving funds, and was not recalled for such default and neglect; but additional funds were placed in his hands, notwithstanding his known defaults and neglects in the instances aforesaid, then the defendant in this action is not chargeable for any failure of the said Hall to account for such additional funds, so placed in his hands, after his said defaults and neglects in respect of funds previously received, were known as aforesaid. By the 4th section of the act of April 24, 1816, c. 69 (3 Stat. 297), "for organizing the general staff," &c. (pamphlet, p. 72), it is enacted: "That it shall be the duty of the regimental and battalion paymasters to pay all the regular troops; and to insure punctuality and responsibility, correct reports shall be made to the paymaster-general, once in two months, showing the disposition of the funds previously transmitted, with accurate estimates for the next payment of such regiment, garrison, or department, as may have been assigned to each; and whenever a paymaster shall fail to transmit such estimate, or neglect to render his vouchers to the paymaster-general for settlement of his accounts, more-

than six months after receiving funds, he shall be recalled, and another appointed in his place."

Mr. Jones and Mr. Key, for defendant. The act of congress is peremptory, that if the paymaster fails to report for six months, he shall be recalled. If the government fails to recall him, his sureties are discharged from all further liability. The government did not rely on his bond only, but on his frequent accounting. The sureties knew this and relied upon the government's discharging its duty in removing a delinquent paymaster. It was part of their security, and entered into their contract. It stands upon the same principle as the case of a creditor giving further time to his debtor without the consent of the surety. Nisbet v. Smith, 2 Brown, Ch. 579; Rees v. Berrington, 2 Ves. Jr. 540; and in Law v. East India Co., 4 Ves. 824, the master of the rolls says: "Where any act has been done by the obligee that may injure the surety, the court is very glad to lay hold of it, in favor of the surety." So a sale at any other place than that which is required by the agreement, releases the surety. Ludlow v. Simond, 2 Caines, Cas. 49, 57. Equity will not bind a surety who is not bound at law. The bond is supposed to be made in reference to the act of congress. Neglect of a superior officer to remove a loan officer in New York, upon his default, discharged the surety. People v. Jansen, 7 Johns. 332.

Mr. Swann, contra. The act of 1816, was only directory to the executive officers. It left a discretion with the president. So long as Hall continued to be paymaster de facto, his sureties were liable. He was constitutionally appointed by the president, who alone had the power of removal. He held his office at the will of the president, and that will could not be controlled by congress. The president was to decide whether the paymaster had complied with the terms of the act of congress, or not, and to remove him, or not, at his discretion. He continues in office until removed by the president, and until so removed his sureties are liable by the express condition of their bond. The New York cases have gone further in discharging sureties than we have here or in Virginia. The case in 2 Caines, Cas., supra, was decided upon the ground that the sale was not made according to the agreement of the parties. The case of People v. Jansen was decided upon the ground of fraud on the part of the supervisors, and fraudulent concealment of the default of the loan officers.

THE COURT (THRUSTON, Circuit Judge, doubting) gave the instruction as prayed by the defendant's counsel, principally upon the authority of the case of People v. Jansen, 7 Johns. 332.

NOTE. This decision was reversed by the supreme court of the United States (11 Wheat. [24 U. S.] 184), upon the authority of the case of U. S. v. Kirkpatrick. 9 Wheat. [22 U. S.] 720, which was not decided until the 17th of March, 1824, seventeen months after the decision of this court in this case.