Cusía, per
Nott, J.
The defendant in this case does not ask the Court to reverse the decree of the Chancellor, but contends that it ought to be so modified, that he should have the benefit of that part of the contract which was actually executed before the filing of the bill.
I have no doubt of the correctness of the general principle, that a Court of Equity will not interfere to set aside an executed contract, even where it may have been j » founded on an illegal consideration. A person is at liberty to do what he pleases with his own so he does not injure another. If therefore a person embarks his - , . if, ^ , , . , ... iunds m an unlawlul traffic, although the Court will not enforce the contract, it will not give him back his ney where he is in pari delicto. But I think it would be difficult to bring this case within that principle.
The complainant was poor and necessitous. That we know, because this provision was made for no other persons. Ignorant of his rights, or rather of the means of *246 obtaining them, or unable to avail himself of those means, and having confidence in the superior sagacity of the defendant, he made him his agent for that purpose. Without imputing to the defendant any actual fraud, it is apparerit, that by taking advantage of this poor old man, he extorted from him, by means little short actual duress, a promise to divide this little pittance with him during life. To secure the performance of that contract, he next obtained a transfer of the certificate of jjjg ciajm which transfer, he must have known, the law itself, under which the complainant’s' claim arose, had declared invalid. Clothed with this authority, he has succeeded in getting possession of the money. And this a ° ° r J # is what he calls an executed contract. Now it is to be observed that the original contract was absolutely void. jt js therefore, as if no contract had taken place. The ■ defendant then can be considered only as agent, or what the Court of Equity would call a trustee, for the complainant. The complainant has never acquiesced in the right of the defendant to retain the money, or any part of it. No settlement has taken place, no discharges have been given, nor any thing from which the Court can even infer a contract executed on the part of the complainant. I 'cannot therefore see any cause of complaint on the part of the defendant. The decree allows him full compensation for his services, and a reimbursement of all his expenses. If he is entitled to all that he has received for those services and expenses, it is allowed him by the decree.
He does not come to this Court then on the ground of equity. For he admits that he has received the money without any consideration, and on a contract which he knew at the time to be unlawful. But the amount of his -language is, that having got an advantage, whether morally right or wrong, if he can intrench himself within a technical rule of law, he will keep it. But this Court *247 would fall very far short of fulfilling the humane intentions of the government by affording him such a retreat. The object of the act was, to provide for a class of men, who had once rendered essential services to their country, and who are now unable to assist themselves. It has erected a barrier against the greedy harpies who, it was foreseen, would be prepared to snatch the last morsel of food from their mouths. And it is the duty of the Court, to see that it is not evaded by those iniquitous speculations, against which it was its object to guard.
*452 / The mode of distinguishing between a principal and surety is by inquiring, whether he who claims to stand in relation of security did or did not derive a benefit from the contract; and the proof of it may be deduced from the circumstance,'that all the payments and all the arrangements relative to it were made by one of several co-obligors. 2 Caines’ Ca. 29. 2 Desaus. Rep. 546. 7 John. 337. And testing this case by this rule it is proved to a demonstration, that W. L. Smith stood only in the relation of a -surety. The report of the sales made by Gibbes the obligee places him in that situation. He derived no interest from the contract. The holders of the bonds treated with Campbell exclusively on the subject, which puts the matter beyond any rational doubt.
fThe right of a surety to be subrogated to all the securities which the obligee has, and the rule that the surety will be discharged if he releases them, are abundantly supported by the authorities quoted at the bar, and are not denied by the opposite counsel./But whether the principle can be extended so far as tio cover the neglect of Gibbes to take a mortgage, which was contemplated by the terms of the sale, especially under the circumstances of this case, may I think well be doubted. The only circumstance relied on to shew that a mortgage was to enter into the contract is, that it was promulgated as a condition of the sale; and it is obvious that Gibbes did not contemplate it otherwise than a security to himself, and not as an indemnity to the personal security that the purchaser was to give. He might therefore, without any violatidn of good faith, dispense with it if he was satisfied with the other security, unless the surety thought proper to insist on it. In short, the terms of the sale were mere proposals, which the con *453 tracting parties were at liberty to vary at their pleasure at any time before the contract was consummated; and in the absence of any proof, and after an acquiescence of about eighteen years on the part of Smith the surety, I think it a reasonable presumption, that it was so understood between all the parties. This is, however, a question of some importance, and as it is not necessary to the decision of the case, the Court have thought proper to reserve it.
It is a well settled rule, that if the creditor or obligee of a bond enters into any new bona fide contract with the principal debtor, whereby the terms of the original contract are varied or altered without the privity or consent of the surety, the surety will be discharged from his liability, The bill states, that in 1794 James Smith, who then the bonds as assignee of Gibbes the obligee, in consideration that Campbell, the principal debtor, would promptly £20 on each of the several bonds, and consolidate the interest then due, and thereby make an increased principal which would carry interest, agreed that he would give time for payment for several years beyond the time fixed by the bonds, and that this arrangement was made without the consent of complainant. The answer admits that such a contract was entered into, and one of the defendants’ own exhibits shews that it was reduced to writing. The counsel for the defendant do not controvert the rule, but admitting it to its fullest extent they contend,
1. That the defendant is an innocent assignee without notice, and cannot be affected by any act done by an intermediate holder.
2. That to discharge the surety the act done by the creditor must be such as would be obligatory on himself. And that admitting the existence of the contract, it was without consideration, and amounted to no more than a forbearance to sue which would not discharge the surety.
*247 There does not appear any just ground to interfere with the decree of the Chancellor, and the motion is therefore refused.

Decree affirmed.