Johnston, Chancellor.
I shall not touch on the defendant’s evidence, but shall decide the case stqted and made out by the plaintiff.
The plaintiff states his case, in the bill. His claim to relief, is, that his intestate was discharged by a contract extending time to his principal, without his intestate’s concurrence. He does not ask this Court to deliver up the paper securities to him, but simply insists that his intestate was discharged and released. All he asks, is, that this Court should declare him discharged.
He states at the same time, that a judgment has been obtained, at law, on the contract, against intestate; which judgment must of course, impliedly assert that he was not discharged from, but bound by, the contract.
The plaintiff, so far from coming here' upon the ground of testimony discovered since the trial at law, states in his bill, that his intestate had the evidence then, which he has now, to prove his discharge, and actually tendered it to the Court. He has, in fact, offered no testimony here, which has arisen since the trial at law. There is no pretence in the bill, or suggestion* in the evidence offered here, that there was any lack of testimony at the law trial, or that any has been discovered since.
This is the plaintiff’s case.
There is no question in my mind, that the extension of credit, by the payee, to the principal maker of the note, is a good discharge of the surety, if made without his concurrence, and under a valid contract, which ties up the hands of the payee. Mere indulgence will not discharge him : mere refusal to sue, will not discharge him Although there are cases to the latter effect. But an obligatory contract to extend time, will; because it is in fact, a new contract, substituting new terms for the old, and therefore discharging the old contract, and whatever discharges the old contract, discharges the parties to it. At all events, if the old contract cannot be enforced against one, it cannot be enforced against any of the parties to it, when all are equally bound.
But a very material inquiry, is, whether the discharge was not as available a defence at law, as it is here. The plaintiff only asks to be discharged, and the question is, whether the Court of law was not as competent to grant him that relief, as this Court. And then follows the question, *16 whether, if the defence was available at law, the plaintiff can be heard here, when he states that he has just come out of a trial, of the same case, in a competent tribunal. Shall he have two trials ?
I think it has never been doubted, either by law or equity Judges, when the question- has been suggested, but that when the fact of surety-ship can be reached at law, a Law Court is bound as much as a Court of Equity to rule that an extension of time, such as is set up in this ease, is a full discharge to the surety: or, that when nothing is asked, but to be declared discharged, a Law Court is as competent to grant that relief, as a Court of Equity. The principle of discharge is, in its nature, a legal principle.
It is difficult to conceive why a discharge should not be a discharge, wherever presented; whether in law or equity — there can be no difference in the two Courts on principle, whatever there may be in the mode of-ascertaining the facts and administering some of the remedies.
*I will look to the question, and see how it stands on authority. One or two authorities in this Court, will suffice to show, that this Court never arrogated exclusive jurisdiction of the question, whether a surety was, or was not discharged : but has always admitted that the Courts of law have concurrent jurisdiction, when they can ascertain the facts.
In Rees and Berrington, (2 Ves. 540,) where the form of paper security was that of a joint and several bond, for the payment of money, Lord Loughborough says, “the form of the security, forces these cases into Equity. But take it out of that form ; and suppose in this instance, that the plaintiff was a surety by a proper bond at law as surety. What is the consequence ? Where a man is surety at law, for the debt of another, payable at a given day, if the obligee defeats the condition of the bond, he discharges the security. When they are bound jointly and severally, the surety cannot aver, by pleading, that he is bound as surety. But if he could establish that at law, the principal at law is, that he has an interest in the condition, and if the period is extended, that totally defeats the condition ; and the consequence is, the surety is released from his engagement.” He adds, “the principle is a legal principle.”
When he says “Suppose the plaintiff was a surety by a proper bond at law, as surety,” I understand him to refer to a bond of such form, as, on its face, would have shown the plaintiff to have been a party, as surety only.
In King v. Baldwin, (2 John. Ch. Rep. 557,) Chancellor Kent says, “he, (King,) has made his defence, to a recovery on the note, before a Court of competent jurisdiction, upon the same fact, that he now puts forward, and that defence was overruled — it was observed by the present Chief Justice, in delivering the opinion of the Supreme Court, in the case of The People v. Jansen, (7 Johnson’s Reports, 332,) that there was nothing in the nature of a defence by a surety, to make it peculiarly a subject of Equity jurisdiction, and that whatever would exonerate the surety, in one Court, ought also in the other. The fact being ascertained, he observed, the rule must be the same, in that Court, as in the Court of Chancery. And this was, undoubtedly, the opinion* of Lord Loughborough, in the case to which the Chief Justice refers.”
In the same case, Chancellor Kent also refers to two law authorities *17 10 East, 34, and 1 Bos. & Pul. 419 for the purpose of drawing from them the rule, as to what shall amount to a discharge ; and squaring his decision in Equity, by the law rule. Surely he would not have done this, if he had not admitted that the subject was one of law cognizance — and that the rule was the same in both Courts.
In our own Courts of Equity, in no ease, has such a question been raised, so that no opinion can be gathered from our own Reporters — but unquestionably higher authority than that I have quoted, is not required, when the question is, as it is, open in our own Courts.
We have seen the opinions of Equity Judges — let us now turn to those of Law Judges. The authorities are abundant, and the practice of law Courts has been never to turn away, but always to take jurisdiction of the question, whether a surety has been discharged by extension of time, or variation of the contract with his principal.
Nothing is more familiar than the successful defence of acceptors and indorsers, on that ground, of whom Lord Ellenborough in Laseter v. Peat, 2 Camp. 185, says “they stand as surety, and sureties to single contracts, and are discharged by extending time to their principals, without their concurrence.”
It is vain to say, that the defence of discharge to indorsers and acceptors, stands upon the principles of commercial law, differently from other cases. That may be — but the question now before us, is not affected by it. The question is not whether indorsers and acceptors may not be discharged by less laches, or extension of time, than other sureties: but the question is, whether a discharge may not be relied on, in a Court of law, by a surety, as Well as in this Court.
But there is abundant authority in law Reports, to show that whatever be the nature of the security whether bond, note, or any thing else -f if the fact of suretyship can be ascertained at law, laches amounting to a fraud on the surety, or extension of time, by valid contract to the principal, without his assent, is a good legal defence for the surety.
*In Peel v. Tatlock, 1 Bos. & Pul. 419, the question was, whether a fraudulent concealment, by the obligee of a bond, of conduct on the part of the principal which it was essential to the surety’s interest that he should have been apprized of, was a discharge, at law, of the surety, and the Court was prevented from holding the affirmative, only because the fact of such concealment was not established.
In this ease, the bond was for the faithful performance of the principal, as cashier to a banking house.
In the Trent Navigation Company v. Harley, 10 East. 33, and see 7 John. Rep. 338; 13 Ib. 175, where the defendant was surety to a bond, for the conduct of the company’s cashier, the question was, whether the laches of the company, in not calling on the cashier, so soon as they might have done, if the account had been properly examined, from time to time, was an estoppel at law, as against the surety. Lord Ellenborough said, he knew of no such estoppel, at law, whatever remedy there might be in equity.
It is evident, his Lordship’s difficulty was not, whether a discharge was not as good a defence in law, as in equity ; but whether that might not amount to a discharge, in equity, which was not sufficient at law. His suggestion has no foundation, either in principle or authority. The case *18 was one of mere indulgence, which is no more a discharge in equity, than in law.
This case, whilst it establishes no distinction between the two Courts, as to what shall amount to a discharge, shows that the fact of being discharged, is a legal defence, not questioned as such, and of daily occurrence.
In The People v. Jansen, 7 John. Rep. 332, already referred to, the suit was on a bond, given for the conduct of the principal obligor, as loan officer of a county in New York: and the question was, whether the defendants, who represented one of the sureties, were not discharged by the laches of the supervisors of the county, to prosecute the principal for-defaults, as, by acts of Assembly, they were required to do.
Thompson J.,
in delivering the opinion of the Court, says,
“ The first question is, whether the defendants can, in a Court of law, avail themselves of these facts, in their defence.” *Here we see the very question, we are now discussing, stated. “I am,” he resumes, “unable to discover any good reason for sending the defendants into a Court of Chancery for relief. There is nothing in the nature of the defence, to make it peculiarly a subject of equity jurisdiction: that the ancestor of the defendants was a surety only, appears upon the face of the bond; and whatever would exonorate the surety, in one Court, ought also,- in the other. The facts being ascertained, the rule of law must be the same in this Court, as in the Court of Chancery. And this seems to be the light in which the subject was viewed, in the case of Rees v. Berrington, 2 Ves. Jun. 542. The doctrine of this case, clearly is, that whether a surety has been discharged, or not, is a legal principle, and that if the form of the security, and mode of proceeding at law, would authorize an enquiry into the fact, whether security 'Or not, the defence would be the same at law, as in equity. Lord Loughborough says, it is the form of the security, which forces these cases into equity. For when the principal and security are bound jointly and severally, the security cannot aver, by pleading, that he is bound as surety: but if he could establish that at law, the rule or principle, by which his liability is to be determined, is a legal principle.”
It would be very extraordinary, if a Law Court should be inhibited, while a Court of Equity should be exclusively entrusted, with the application of a legal principle : when the Court is asked to do nothing more than barely apply it.
In Paine v. Packard, 13 John. R. 174, the defendant pleaded specially, that he signed the note, on which he was sued, as surety for one Manson, that whilst Manson was solvent, he urged the plaintiff to proceed against him, but that he neglected to do so, until Manson became insolvent and absconded ; on demurrer the plea was held good.
I do not uphold this decision, so far as it asserts that the mere indulgence of Paine, in defiance of Packard’s remonstrances, discharged Packard. But it is good to show that, “whether a surety has been discharged or not, is a legal principle;” and that the rule is the same in law, as in equity.
Indeed, it is not conceivable how there can be any difference, if, as Gibbs, Ch. J., says : “the defence which may be set up [*at law,] of time given to the principal, is borrowed from the Court of *19 Equity.” It must be the same in the Court borrowing it, as in that whence it was borrowed I rather incline, however, to think that it is a defence standing on a legal principle, and that the borrowing was by this Court.
Come whence it may, it is now common to'both Courts.
I shall stop here. All these cases, both law and equity, establish that Maxwell’s was^a good defence at law.
The only difficulty which ever forced such cases into equity, was that of arriving, in a law Court, at the fact of suretyship. Whenever that could be established, the law Courts took cognizance of the defence.
In Peel v. Tatlock, Trent. N. Comp’y. v. Harly; and People v. Jansen; the fact of suretyship appeared on the face of the bonds, which showed for whose conduct the undertaking was, and the Court of law accordingly took cognizance of the defence.
In Paine v. Packard, the fact was admitted by the demurrer’, and the defence prevailed.
In the case at bar, the fact of suretyship appears by the character in which Maxwell subscribed the note. He subscribed as surety, and the note could never be produced against him, without that coming along with it, to show he was surety only. It is the very form of subscription which in the case of Fulton v. Matthews, 15 John. R. 433, was considered satisfactory proof that Matthews was only surety for W edge, he subscribed “Tho. Matthews, security.”
I have been more solicitous to prove that the rule, as to a surety’s being discharged, was the same in law or equity, and that whatever was a discharge in one Court, was, also, in the other; than to establish that the defence, set up by Maxwell, was good in either Court, although the cases show conclusively that it was good in both.
I have been less anxious on this latter point, because if the rule be the same in both Courts, it is perfectly immaterial whether the defence was good or bad. If good, it has been before a competent tribunal; if bad, the plaintiff is not entitled to relief here.
If the Court of law was competent to hear and determine *the defence, if it had concurrent jurisdiction with this Court of the subject matter, as I think I have shown, then the plaintiff states in his bill he has been before a competent tribunal: and by that statement has barred himself on the face of his own pleadings from relief here. The defendant is under no necessity to plead that which the bill states and pleads for him. The office of defensive pleas is not to argue or assert points of law, but to aver facts, from which the legal inferences follow— but the legal inference is the same, from the same fact, from whatever side the fact comes out.
If a defendant has been before a competent tribunal which has proceeded to judgment, that decision, until reversed, is conclusive upon him in every tribunal having concurrent or other jurisdiction. It is conclusive upon him as to every matter of defence, not only presented, but which could have been presented by him ; and it is conclusive upon him, although the judgment be erroneous, if he acquiesce in it, and does not proceed to reverse it. It is conclusive on him, because a party, whenever he is brought into a Court, is bound to, full diligence, which if he uses, he will obtain Ms right. If he neglects, either in putting in proper pleas *20 or introducing all his evidence to support them, he has no one to blame but himself; nor will his neglect in one Court be allowed to give him a right to a second trial, either in that Court or another. If the tribunal before which he is, commits errors in deciding, his appeal is not to a Court of merely concurrent, and not appellate jurisdiction, but by that tribunal which is by the constitution provided exclusively and expressly, for the correction of errors ; and if he neglects to prosecute an appeal, he must bear the consequences.
It is surely a hard case, if a party entitled to a relief in both Courts, (I do not say this plaintiff is, because I do not go into an examination of the evidence against him,) but it is a hard case, if a party entitled to relief in both Courts is repelled from both, and is relieved in neither. But the wholesome rules of law cannot, for that reason, be broken down. In that case, ten would suffer for the one relieved.
1 Camp. N. P. 249, 200, 557; 1 Chitty, 417. I think the defence offered was receivable at law, under the general issue ; but if that plea would not have covered it, it *was Maxwell’s business, (being at liberty), to put in a special plea that would ; and I also conceive that the defence, being improperly rejected, he ought to have carried the case up by appeal; where, if I am right, he would certainly have succeeded in correcting the error.
It has been said in argument, that because this Court possesses concurrent jurisdiction of the defence presented at law, which defence was not effectually made there, this Court may take it up. One plain answer is, that the pleas still stand on the law record, and that the judgment is a defeat of the facts pleaded ; in which must be included every fact which could have been proved under the pleas. The judgment at law, then, is the judgment of that Court having competent authority to render it; that Maxwell was not discharged. This Court has no right to reverse that judgment; if it should reverse it, we would have two opposite judgments of equal authority and obligation, being judgments of Courts of co-equal and concurrent jurisdiction, both upon the same subject matter.
Another answer is, that if Maxwell had not put in the pleas at all, and had not pretended to defend himself at law, he could not be heard here. He had his remedy there, and the same remedy which is now asked here. A Court of Appeals, common to both Courts, rendered it certain that the rules of law, applicable to his defence, were the same in both Courts. No reason could therefore be offered, why he should have neglected his defence at law and come into this Court, except a mere speculation as to the probability of obtaining a more favorable decision on the facts founded on the different tempers of mind and modes of thinking, of the persons constituting the two Courts. But the corrupting effect of this, if allowed, every one must see — of course the case put is hypothetical.
It was said, however, that Maxwell committed no fault, and that inasmuch as the decision at law was erroneous in law, this Court should relieve the hardship by exercising its concurrent jurisdiction.
Now the answer is, first, Tie was in fault for not appealing. " Secondly, this Court, for want of appellate jurisdiction, *has no *21 authority to 'reverse the law decision, or pronounce whether it was or was not, erroneous, with a view to sustain or overrule it.
Noble, for the plaintiff,
cited and commented on Wayne v. Kirby, December Term, 1831; Sherbrook v. Russell, *1 Eq. Rep. 315; Executor’s of Green v. Warren’s Executors, 1 Eq. Rep. 430; Butler v. Hammond, 2 Eq. Rep. 226; Kennedy v. Gibbs, Ib. 389, 3 Eq. Rep. 596; Hampton v. Levy, 1 M’C. Ch. 145; Golphin v. M’Kinney & Briethaupt, Ib. 280; Smith v. Tunno, Ib. 443; Rees v. Barrington, 2 Ves., Jr., 540.
Burt, for the defendant.
Again, the declaration of the law Court, that this. Court possessed exclusive cognizance of the defence, could not make it so; it could neither take away its own jurisdiction nor alter the relative position in which this Court stands to that, which as to the subject matter, is that of a Court of concurrent jurisdiction, bound by comity to respect the decision of the other Court which first took hold of the case.
Again: as a Court of concurrent jurisdiction, this Court possesses no more power to relieve from hardships growing out of erroneous decisions of that Court, on a matter within its jurisdiction, than that Court, sitting at a subsequent time, possesses. (7 T. Rep. 692; 8 Ib. 436; 1 John. Ch. Rep. 91, 543; Johnson’s Cases, 433.) Now,,if the plaintiff,, in place of filing this bill, had at March Term, 1831, come into the same law Court, before the same Judge who excluded the evidence at October Term, 1830, and satisfied him by an ample examination of authorities, that the defence was a good one at law, and ought to have been received, could he have vacated the judgment and ordered a new trial ? Not without usurping the province assigned by the Constitution to the Appeal Court.
But I am arguing a point as well settled as any in the whole circle of the law. — Look to the authorities, and they will show this.
From this decree the plaintiff appealed, on the grounds :
1. That the Chancellor should have entertained the bill, as the matters set forth in it were of equitable cognizance : and he erred in ruling that the defence at law was available there, when the contrary had been held by the Court of law.
2. That the plaintiff, suing in his representative capacity, on a demand of his intestate, is not liable for the costs, either personally or out of the estate.
Curia, per Johnson, J.
The mortgage of July, 1826, and the covenants therein contained, vary essentially the legal effect of the note of March, 1820. According to the note, the sum contained in it was due and payable twelve months after the date, (March, 1821). By the covenants contained in the mortgage, the payment is postponed until January, 1829. Thus varied, it is not the same contract by which the complainant’s intestate was bound. But the Court concur entirely with the Chancellor, for the very satisfactory reasons he has advanced, that this defence was available at law — that his only remedy for the error of the Circuit Law Court in overruling the defence, was by appeal, and having neglected to pursue that course, he is not entitled to relief in Equity.
*22 The Chancellor has made no special order on the subject of costs. The question propounded in the second ground of the complainant is not, therefore, before the Court, and cannot properly arise, except upon motion to tax cost& before the Commissioner.

Motion dismissed.

O’Neall, J., concurred.