ELI M. SMITH, Administrator of WILLIAM SMITH, Deceased, vs. NELSON DOAK—Appeal from Red River County.

Defenses which are admissible either in courts of law or of equity, where those jurisdictions are separate and distinct, are available here, where there are no separate courts in which equitable rights are exclusively cognizable.

Our courts having jurisdiction of rights as well equitable as legal, all the rights, both equitable and legal, appertaining to the parties and subject matter, must be adjudicated here, in every suit wherein they are litigated and drawn in question.

In a suit between the payee and makers of a promissory note, parol evidence is admissible to show that one of the makers signed the note as surety, although upon the face of the note they all appear to be principals; and the same rule applies to a note or obligation under seal. [4 Tex. 325; 8 Tex. 66.]

To deny to parties capable of contracting the power and right to make their own contracts, would be for the courts to assume the guardianship of adults as well as of infants.

The appellant brought suit against the appellee, upon a note made payable to the plaintiff's intestate, as follows:

"$662.67. On or before the twenty-fifth day of December next, we or either of us, promise to pay to William Smith, Sen., six hundred and sixty-two dollars and sixty-seven cents, for value received. Witness our hands and seals, February, 1842.     (Signed)        "WM. WILLIAMS, [seal.]
                                                    [seal.]
                           "NELSON DOAK, [seal.]

The defendant pleaded that the note, when presented to him,

had the signature of Williams, and that it was signed by himself as a surety, under a special agreement with the plaintiff's intestate that the latter should obtain thereto the signature of one Shadrick Jarman, to be placed above the signature of the defendant, and that the defendant should become the surety of both Jarman and Williams; that he delivered the note to William Smith, the intestate, with this express understanding, and that he (Smith) failed to obtain the signature of Jarman as one of the makers of the note, and that in consequence of this failure the note was not obligatory upon the defendant, and conferred no right of action.

The plaintiff moved the court to have this answer stricken out, which was refused.

There was a trial, and a special verdict, which finds in substance that William Smith, the intestate, held a note on Samuel Smith, and that Samuel Smith held a note on Jarman and Williams, which he had left with William Smith as collateral security for his own note; that the defendant lifted Samuel Smith's note by renewing the note of Jarman & Williams, and going security on said note, under the special agreement that the payee, William Smith, was to obtain the signature of Shadrick Jarman as one of the principals to the note; that the defendant signed as security for Jarman & Williams; that the payee failed to comply with his agreement to obtain to the note the signature of Jarman; and that Jarman, at the time, was notoriously insolvent.

Upon this verdict the court gave judgment for the defendant, and the plaintiff appealed.

WEBB and DUVAL for appellant.

The judge erred in permitting parol evidence to change and vary the written contract of the parties, as evidenced by the instrument sued on. [1 Starkie's Ev. marg. p. 297; 2 id. from 549 to 552, inclusive.]

The special verdict shows that a full consideration passed from the plaintiff's intestate to Doak for the note, to wit: the note

on Jarman & Williams. He was therefore liable as principal, to whom the benefit of the contract enured.

MORRILL for appellee.

The instrument sued on is an escrow. [5 Humph. (Tenn.) R. 133; 3 Ala. 91; 11 Peters, 86; 4 Kent, 454.]

If not an escrow, the appellant's intestate acted so fraudulently as to release the appellee. [1 Story's Eq. secs. 323, 4 and 5.]

The case may be regarded in the light that it would be if the appellant's intestate had obtained the signature as agreed, or if the signature had been obtained when Doak signed, and was afterwards released by the intestate. This would have released Doak. [1 Story's Eq., sec. 112.]

Mr. Justice WHEELER, after stating the facts, delivered the opinion of the court.

To reverse the judgment, it is insisted that the court erred:

1st. In allowing the parol agreement to be set up as a defense to the note.

2d. In giving judgment for the defendant upon the special verdict.

1. The first question here presented is not wholly free from difficulty. In the case of Sprigg vs. The Bank of Mount Pleasant, 10 Peters, 266, it was said (upon the authority of the cases of Rees vs. Barrington, 2 Vesey, Jr., 542, and The People vs. Janson, 7 Johns. 337) to be the rule well settled at law, that, where principal and surety are bound jointly and severally in a bond, although there is no express admission on the face of the instrument that all are principals, yet the surety cannot aver by pleading that he is surety only. Yet the learned judge who gave the opinion, in treating the subject, seems to have supposed that it might have been otherwise in equity, and that a court of equity might, perhaps, in such a case, allow the surety to set up that he was only surety, and let him in to all the protections that are usually extended to sureties. The point, however, is stated hypothetically, and no decided opinion is expressed upon it.

In the case of The People *vs.* Janson [7 Johns. 337], it was said that there was nothing in the nature of the defense of a surety to make it peculiarly a subject of equitable jurisdiction, and that whatever would exonerate the surety in one court ought also in the other. The facts being ascertained, the law must be the same in both courts. And in King *vs.* Baldwin [17 Johns. 398], it was said to be the established rule that, if the form of the security will admit of the inquiry at law, whether surety or not, a court of law will take cognizance of the surety's defense. In Rees *vs.* Barrington, the Lord Chancellor, LOUGHBOUROUGH, said "the form of the security forces these cases into equity." [2 Vesey, Jr. 542.]

It seems, indeed, settled by the authority of several cases, that, upon the fact of suretyship being established, whatever would discharge the surety in equity will also discharge him in a court of law. [2 Bailey, 552; 1 McC. Ch. 297; 5 Hammond, 207.] And in Wayne *vs.* Kirby [2 Bailey, 552], the court went further, and held that whatever would discharge a surety in equity may also be set up as a defense in a court of law. A court of law (it was said) can be just as well informed by parol evidence of the character in which the obligors became bound as a court of equity.

This inquiry is only material here, in so far as it conduces to show whether the present defense could be set up either at law or in equity; for if admissible in either jurisdiction, it must be available here. Having no separate court in which equitable rights are exclusively cognizable, and having jurisdiction of rights as well equitable as legal, all the rights, both equitable and legal, appertaining to the parties and the subject matter, must be adjudicated here in every suit wherein they are litigated and drawn in question.

Respecting the admissibility of the defense here relied on, we find cases bearing more or less directly upon the points presented, but no one which can be said to be an exact precedent for this.

In the case of The Bank *vs.* Kent [4 N. Hamp. 221], which was *assumpsit* upon a joint and several promissory note, it was

held competent for the defendant, who signed as one of two joint and several makers, both appearing to be principals, to show by parol evidence that he was only a surety, and that the plaintiff, knowing that fact, had so conducted as to discharge him. In the case, also, of Paine *vs.* Packard [13 Johns. 174], the court permitted one of two joint makers of a promissory note to show that he was only surety .for the other, and to avail himself of a defense which appertained to him only in his character of surety. And this decision was affirmed in the subsequent case of King *vs.* Baldwin [17 Johns. 334].

These, however, were cases upon promissory notes not under seal. And in the first of them, it was said to have been "doubted whether, in an action of debt upon a bond, in which the obligors are bound jointly and severally, a court of law would decide upon an averment that one of the obligors put his seal to the instrument as a surety, when it did not appear to be true on the face of the bond." [1 Gall. 32; 2 Vesey, Jr. 542; 7 Johns. 337; 10 Pet. 264.]

But there certainly are cases in which parties to sealed notes and other specialties have been held not *estopped* from showing by parol in what character they created the instrument.

In the case of Walker *vs.* Stribbling [1 Spears, 23], where one Caldwell, the agent of the plaintiff, authorized by him to obtain the payment of the debt, procured certain sealed notes to be executed by McCullough, the principal debtor, with the defendant as surety, it was held that the declarations of the agent, made while he held the notes and was endeavoring to obtain further security, were admissible in evidence to show with what understanding and under what circumstances the defendant signed the note.

In Peters *vs.* Barnhill [1 Hill (S. C.) R. 234], in an action between two joint makers of a sealed note, it was held that the plaintiff might show by parol evidence that he was but surety, and the defendant the principal debtor.

In Anderson *vs.* Pearson [2 Bailey, 107], it was held competent for one of two sureties upon a promissory note to prove by parol that he signed as surety, both to his co-surety and the

principal debtor. After citing in support of their decision the case of Craythorn *vs.* Swinburne [14 Vesey, 160], where parol evidence was received to show the view with which Swinburne executed his bond, and Lord ELDON expressly decided on its admissibility, the court proceeded to say that, "from the principles on which that case was decided, it seems clear that if Swinburne had signed the joint bond as a third party, he might have shown by parol that he signed as surety to both, and that both by agreement should be liable before him." If parol evidence was admissible in these cases, where the action was between joint obligors, to show that one signed but as surety for the other, it is difficult to perceive any good reason why it may not be admissible in an action between the payee and a maker of the same instrument, when the former was a party or privy to the contract creating the fact of suretyship sought to be established.

These cases go very far, certainly, to decide the question under consideration as to the admissibility of the defense set up in this case, and the evidence adduced in its support.

The question, however, in this case, as in that of Pain *vs.* Packard, and several others to which we have had reference, was raised and decided upon a motion in the nature of a demurrer to the plea. No objection was made to the introduction of the evidence. The plea alleges that the defendant signed as a surety, and the exception admitted the truth of the plea for the purpose of considering the exception. Upon this point the case of the Bank of Steubenville *vs.* Carrol [5 Hammond, 207] may perhaps be considered a precedent for the present. That also was a suit upon a sealed instrument, a bond. The defendant pleaded that he was a surety, and set up special matter in avoidance of his liability. On demurrer the court held the plea good; and as the demurrer admitted the fact of suretyship alleged in the plea, gave judgment. It is, however, to be remarked, that in that case there was not oyer of the bond, by which it could appear from its face upon the record that the defendant signed as principal. How far this circumstance may distinguish that case from the present, it

does not become necessary here to consider. Nor is it perhaps necessary positively to determine, in the present case, whether parol evidence is admissible to show that one of several joint and several obligors to a bond, or other specialty, signed as a surety, when the action is between him and the obligee, and when the instrument itself is complete and free from ambiguity.

In the present case, the note upon its face appears incomplete; it purports to be under seal. There are also in the proper place three seals, or scrolls intended for seals, with the word seal legibly written in each, evidently prepared to serve as seals for as many signatures. To the middle seal the signature is wanting, and there is a blank between the signatures which naturally leads to the supposition that the note was originally prepared and designed to have been signed by three persons. This, we think, is a circumstance of itself sufficient to authorize the admission of parol evidence, not to contradict or vary the terms of the writing, but to explain this apparent omission in the execution of the note, and to show that it was to have been signed by another person; and, in a word, to show whether the writing was in truth finished, or as upon its face it appears unfinished and incomplete.

The evidence being then admissible, it remains to inquire:

2d. Do the facts found by the jury authorize the judgment upon them for the defendant?

Upon this inquiry the case of Hill vs. Sweetser [5 N. H. R. 168] is in point. The facts of the case, and the conclusions drawn from them, are succinctly stated in the opinion, where the court say: "The facts are, shortly, that the defendant agreed to be a surety for Knowlton, and to sign a note in which both are named as sureties. After the principal and the defendant had put their names to the paper, it was carried to Knowlton to sign and he refused. It was then delivered to Fife without consulting the defendant, and Fife, knowing all these facts when he received the note, now attempts to enforce the payment of it by the defendant. The question is, whether Fife is entitled to recover. We are of the opinion that he is not entitled to recover. The contract was never completed.

The evidence shows, not that the real contract was different from the contract which is proved by the note, but that, under the circumstances of the case, the note is not evidence of a contract. When Knowlton refused to sign the note, it ought to have been cancelled or returned to the defendant. It certainly ought not to have been delivered to Fife without the defendant's consent. He never had consented to be a surety alone. And as Fife knew all the circumstances, the attempt to enforce the payment of the note can hardly be viewed in any other light than as a fraud. It is clear that the defendant is not bound by the note."

The present case is stronger for the defendant than the one just cited, inasmuch as the agreement to procure the additional signature was the plaintiff's own express undertaking, in which he assumed for the defendant the exercise of a special agency or trust, which it became his duty faithfully to discharge.

The completion of the instrument was intrusted to him, and depended on his own pleasure. If he did not choose to have it completed, it was his own election. He was not obliged to complete it, but until completed he had no right to attempt to enforce it. He had received it to become the contract of three, and had no right, without the consent of the makers, to change and convert it into a contract of two only. The contract sued upon had not been entirely consummated, but was unfinished, incomplete, and not the contract which it was originally designed and intended to have been. It therefore was not, under the circumstances, a valid contract between the parties, but required something else to be done (viz.: the signature of Jarman) to make it so. The contract being thus regarded, the insolvency of Jarman was a matter quite immaterial. The undertaking of the plaintiff upon which the defendant gave his signature was irrespective of the solvency of Jarman. The defendant had a right to make his own contract, and he now has the right to stand upon the exact terms of that contract. [9 Wheaton, 680.]

If there be any hardship in the case, it is one against which the law cannot relieve. To deny to parties capable of contract-

ing, the power and right to make their own contracts, would be (to borrow an observation of Chief Justice MARSHALL), for the courts to assume the guardianship of adults, as well as of infants. [2 Peters' U. S. Cond. 481.] In legal contemplation, the defendant in this case has not committed the first fault, whatever may be thought of the morality of his conduct.

But the first fault of which the law can take cognizance consists in attempting to enfore a contract which the plaintiff on his part has failed to complete, and in respect to which he has not complied with his own undertaking.

The objection that the consideration of the note passed to the defendant, it is not necessary to discuss. It is not a necessary or even probable inference from the facts disclosed, and is repugnant to the conclusion that the defendant signed as a surety, which the verdict expressly finds and establishes.

It is the opinion of the court that the plea contains a valid defense to the action; that it is supported by the facts found by the jury, and that the judgment, therefore, be affirmed.